FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 15 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
United States of America,

                        Plaintiff,                  15 CR 213 (SJ)

     - against -                       FINDINGS OF FACT
                                                  AND
                                         CONCLUSIONS OF LAW

Noelle Velentzas & Asia Siddiqui,

                        Defendants.
-------------------------------------------------------------X

JOHNSON, Senior District Judge:

     Defendants Noelle Velentzas and Asia Siddiqui ("Defendants") were indicted on charges of conspiracy to use a weapon of mass destruction (18 U.S.C. § 2332a(a)(2)) and teaching and distributing information pertaining to the making and use of an explosive, destructive device, and weapon of mass destruction (18 U.S.C. § 842(p)(2)(A)). (See Docket Number ("Dkt. No.") 16; Indictment, ¶¶ 1-2). Additionally, Defendant Siddiqui was charged with making a material false statement in a matter involving domestic and international terrorism (18 U.S.C. § 1001(a)(2)).

     Before the Court are two motions: (1) Defendant Siddiqui's motion to disclose information and images of the Undercover Agent (the "UC") discovered during their independent investigation of her entrapment defense and (2) the

Government's motion for, <u>inter alia</u>, partial closure of the courtroom during the UC's trial testimony. For the reasons outlined below, the Defendant's motion is GRANTED and the Government's motion is GRANTED in part and DENIED in part.

## I. Background

### A. The Defendants' Motion[1]

Defense counsel claims to have discovered aspects of the UC's identity in *The Gothamist* online publication. In complying with this Court's July 29, 2015 Protective Order (the "protective order"), Defendants notified the court of their intention to use this information in prosecuting their defense. The Government objects to the disclosure arguing the disclosure will prejudice at least one ongoing national security investigation and destroy the continued viability of the UC as an undercover agent. Finally, the Government argues that the protective order prohibits the disclosure.

### B. The Government's Motion[2]

The Government moves to take numerous steps aimed at protecting the identity of the UC for the sake of the UC's safety and ongoing national security

---

[1] The Court notes that the instant motion was filed by Defendant Siddiqui but defense counsel for Defendant Velentzas argued during oral argument in favor of Defendant Siddiqui's motion. As such, the Court will consider this motion on behalf of both defendants.

[2] See supra note 1. Counsel for Defendant Velentzas did not file a response to the Government's motion but argued at oral argument on the motion. As such, the Court will consider this motion on behalf of both defendants.

2

investigations. (See Dkt. No. 66). Specifically, the Government seeks the following eight separate but related forms of relief:

1. Closure of the courtroom to the public during the UC's testimony (except for members of Defendants' immediate families);

2. The provision of a live audio feed of the UC's testimony to be broadcast to another public location within the courthouse;

3. The barring of disclosure of and cross-examination concerning the UC's true identity;

4. The permission for the UC to testify under an alias;

5. The requirement that that any videos or photographs of the UC that are shown in open court or are otherwise released to the public or the press be altered to pixelate or otherwise obscure the UC's face;

6. The prohibition of all non-official recording and photographic devices from the courtroom during the UC's testimony;

7. The means to transport the UC to and from the courtroom via non-public routes ; and

8. The preclusion of inquiry by Defendants into the UC's place of residence and whereabouts of the UC's family, as well as

P-049

other investigations by the UC that are unrelated to the defendants.

(Id).

Defendants object to the proposed courtroom closure claiming it would unnecessarily violate Defendants' Sixth Amendment right to a public trial. Defendants also object to a bar on cross-examination concerning the UC's identity since, in Defendants opinion, the UC's identity could be relevant if the UC puts her credibility at issue. Finally, Defendants object to a bar on inquiring into the UC's other investigations unrelated to Defendants since other investigations may be relevant to showing a pattern of entrapment by the UC. Defendants do not object to the Government's other requests.

## II.  **Findings of Fact**

1. The Classified Information Procedures Act ("CIPA") requires courts to "issue an order to protect against the disclosure of any classified information disclosed by the United States." 18 U.S.C.A. § APP. 3 § 3.

2. On July 29, 2015, this Court issued a protective order addressing Defendants' ability to disclose any identifying information about the UC. (See Dkt. No. 31).

P-049

3. The protective order bars disclosure of any discovery materials received by Defendants. (See Dkt. No. 31, ¶¶1-6). The protective order also bars disclosure of materials concerning the UC, "whether obtained or derived from the discovery material or independently of the discovery material" unless Defendants seek and receive authorization from the Court. (Id. at ¶¶5-6).

4. On October 29, 2015, *The Gothamist*, an online media publication, published an extensive article concerning the identity of the UC.[3]

5. The next day, *Huffington Post* made the story national news when it posted a similar article, citing the *Gothamist* article, and identifying the UC as an undercover officer working for the NYPD who staged a conversion to Islam and imbedded herself within the Brooklyn College Muslim community for more than two years.[4]

6. At some time before October 4, 2016, Defendants used information from the two articles to figure out the UC's real identity. (See Dkt. No. 60).

---

[3] See Aviva Stahl, *NYPD Undercover "Converted" To Islam To Spy On Brooklyn College Students*, http://gothamist.com/2015/10/29/nypd_undercover_brooklyn.php (last visited 1/31/17)
[4] See Christopher Mathlas, *University Faculty: Don't Let Undercover NYPD Officers Spy on Our Muslim Students*, http://www.huffingtonpost.com/entry/cuny-nypd-muslim-surveillance_us_5633bc89e4b0631799124f48

5

7. Defendants obtained pictures of the UC, along with the UC's real name, <u>alma mater</u>, even the names and pictures of some of the UC's close personal friends through publically available information. (<u>See</u> Dkt. No. 60).

8. Defendants gave notice to the Court on October 4, 2016 of their intention to use this information to prosecute their defense. (<u>See</u> Dkt. No. 60-1).

9. Specifically, Defendants intend to "disseminate photos and names used by [the UC] to both an investigator, and the leadership of mosques in the New York area with a request that they post the photos and invite any individuals who have met [the UC] to contact [Defendants'] counsel." (<u>See</u> Dkt. No. 63-1).

10. In their October 4 notice, Defendants accurately explained that CIPA did not apply to information obtained outside discovery. (<u>Id</u>); <u>see also</u> 18 U.S.C.A. § APP. 3 § 3 (referring only to classified information disclosed "by the United States.").

11. On October 20, 2016, Defendants renewed their request to disclose the information about the UC. (<u>See</u> Dkt. No. 63-1). This time, Defendants argued that the plain text of the Court's protective order did not forbid the disclosure; it only required prior notice and authorization.

6

12. This Court held two separate hearings on this motion. First, the Court entertained oral arguments on this motion on December 15, 2016. The Court reserved decision. (See Minute Entry dated 12/15/2016). Then, the Court held further oral arguments on this motion on January 26, 2017. (Transcript of Hearing on Jan. 26, 2017 ("Tr.") at 1-9).

13. During the January 26 oral argument, the Government requested that, at most, Defendants be permitted to use the UC's image in a targeted fashion to approach direct possible witnesses. (See Tr. at 7).

14. The Government vehemently denied that there are publically available images of the UC identifying her as an undercover officer. (See Tr. at 8).[5]

15. On December 1, 2016, the Government filed a motion seeking permission to use certain measures to protect the identity of the UC. (See Dkt. No. 66). The Government also filed a separate classified ex parte brief concerning matters sensitive to national security.

---

[5] Following the January 26 oral arguments, The Daily Beast published an article claiming that despite AUSA Sasso's assertions, "The Daily Beast, however, was able to surface photos of a woman identified in the caption as an NYPD informant known as [UC] within minutes of searching online..." Katie Zavadski, *NYC Judge: Put a Burqa on Undercover*, Daily Beast, http://www.thedailybeast.com/cheats/2017/01/26/nyc-judge-put-a-burqa-on-informant.html?via=desktop&source=copyurl

7

16. Defendants filed a response on December 14, 2016 taking issue with requests 1, 3, and 8 of the Government's public motion. (See supra §I; see also Dkt. No. 70).

17. Defendants argued that the UC's cover is already blown due to the articles written about her infiltration of the Brooklyn College Muslim community.

18. The Government brought forth no additional substantiation for its view that despite the leaks, the UC's safety and continued viability require the suggested protective measures.

19. The Court questioned the parties as to possible alternatives to closing the courtroom. Among the alternatives was the possibility of the UC wearing a niqab (Islamic women's clothing that conceals the entire body except the eyes) or a burqa (Islamic women's clothing that conceals the entire body, including the eyes) during her testimony.

20. The Government argued that the niqab implicated the Confrontation Clause in that it hindered the jury's ability to see the UC's expressions and demeanor while the UC was testifying. (See Tr. at 13).

8

P-049

21. Defendants prefer that the UC wear a niqab over closure of the courtroom. (Id).

### III. Discussion and Conclusions of Law

#### A. Defendants' Motion

At issue in Defendants' motion is whether the protective order issued by this court bars Defendants from making their requested disclosure.[6] If the protective order bars the disclosure, the issue becomes whether the First, Fifth, or Sixth Amendments nullify the protective order.

The protective order, by its plain language, does not prevent Defendants from using independently obtained information about the UC's identity. At most, the protective order requires notice and authorization prior to disclosure. Based on the submissions of the parties, the oral arguments before the Court, the findings of fact, see supra at I., and for the reasons stated below, Defendants' motion to use certain information to prosecute its defense is GRANTED.

#### 1. The protective order

There are two operative paragraphs here – paragraphs five and six. In pertinent part, paragraph six says:

> The defendant and defense counsel will not show or provide cover names or any other identifying information about any UC contained in, or derived or prepared from the discovery material

---

[6] The parties agree that CIPA does not bar Defendant's requested disclosure since CIPA only protects discovery materials. See Tr. at 2. (Government: "Our position is that CIPA is not actually the applicable matter here."); see also (Dkt. No. 6) (arguing that CIPA does not apply).

> except as authorized in paragraph 4. *While this Stipulation and Order does not preclude the defendant from sharing with any other individual information about the UC obtained independently of the discovery material*, the defendant and defense counsel agree not to disseminate or discuss with the media or refer to or attach in any public filing any cover name or identifying information about any UC – whether obtained or derived from the discovery material or independently of the discovery material – except as described in paragraph 5.

(Dkt. No. 31, 3-4, Endorsed Stipulation and Order (Protective Order)) (Emphasis added).

The first sentence of paragraph six bars disclosure of materials "contained in, or derived or prepared from the discovery material." (Id). The information at issue was not acquired from discovery.

While the second sentence does control independently obtained information, it does not bar disclosure. "[T]*his Stipulation and Order does not preclude the defendant from sharing with any other individual information about the UC obtained independently of the discovery material."* (Id) (emphasis added). Defendants agreed not to disclose material like the contested material "except as described in paragraph [five]." (Id).

Paragraph five requires defense counsel to "provide advance notice to the Government and make application to the Court for authorization to make such disclosure[s], and such notice must be given sufficiently in advance of the contemplated disclosure so as to permit briefing and argument…" (Dkt. No. 31 at 3).

10

Defendants notified the Government and the Court of their intention to disclose the information at issue on October 4, 2016, then again on October 20, 2016, thus fulfilling their notice requirements. (See Dkt. No. 60 & 63). Pursuant to the protective order, Defendants have not disclosed the information so the Government could brief and argue its objection to the disclosure and so the Court could consider and authorize the disclosure.

The Government argues that the loophole in the protective order that allows Defendants to disclose independently obtained information upon notice and authorization – a loophole the Government agreed to – was intended to allow Defendants to disclose information to "specific witnesses known to the defense." (Dkt. No. 68). However, the phrase "specific witnesses known to the defense," does not appear in the protective order, neither does any other indicator of this alleged understanding. The Government argues that the Court should nonetheless honor the "spirit" of the protective order. (Id). But the spirit the Government seeks to enforce would undermine the plain language of the protective order which explicitly allows Defendants to make the requested disclosure. Therefore, what the Government asks for is <u>not</u> in the spirit of the protective order.

The Government's overall aim, however unintentional, is that this Court direct Defendants on how they can investigate their case with publically available information. (See Tr. at 7). This Court is unwilling to do that. During oral argument, the Government requested that any disclosure be limited in "perhaps a targeted

11

P-049

fashion to approach direct possible witnesses as opposed to making it a completely public photo," as Defendants suggest. (Id). The Government's request misses the point. If Defendants knew who would be possible witnesses, they would not need to show pictures of the UC to mosque leaders or hire an investigator.

As part of their defense, Defendants need to find others who were coaxed, or almost coaxed, into committing national security crimes by the UC. The Government is in control of information about the UC's prior investigations and prior targets. If the Government wanted to, it could limit, or even obviate, the need for the disclosure by identifying prior targets to the Defendants. The Government understandably declined to grant Defendants access to such files. But the decision to withhold sensitive, perhaps even classified, information from Defendants should not lead to Defendants also being forbidden from using public information.

Nevertheless, this Court cannot ignore how troubling it is that the identity of an undercover officer is public. The undersigned is well acquainted with the dangers of undercover work. That this brave officer's identity is public – along with the identities of close friends – is certainly cause for great concern. But this Court cannot unscramble a scrambled egg. The Court cannot pretend that this information is not *already* in the public domain.

As such, this Court holds that Defendants are authorized to make the requested disclosure. However, this authorization in no way extends to discovery materials. Since the protective order does not bar the requested disclosure, the

portions of Defendants' motion regarding their First, Fifth and Sixth Amendment rights superseding the protective order are moot.

### B. The Government's Motion

#### 1. Request 1 - Courtroom Closure

Chief among the Government's requests is the partial closure of the courtroom during the UC's testimony. (See Dkt. 66). Defendants claim such a closure would unnecessarily violate their Sixth Amendment right to a public trial since it would only serve to keep secret an already public identity. Based on the submissions of the parties, the oral arguments before the Court, the findings of fact, see supra I., and the reasons stated below, the Government's motion to close the courtroom is DENIED because there are less restrictive alternatives.

The Sixth Amendment guarantees a criminal defendant a right to public trial. U.S. CONST. amend. VI. But that right is not absolute. Waller v. Georgia, 467 U.S. 39, 45 (1984). It may give way to other interests such as the Government's interest in inhibiting disclosure of sensitive information. United States v. Gupta, 699 F.3d 682, 687 (2d. Cir. 2012). Still, courtroom closures should be rare with the court preferring an open court. See Waller, 467 U.S. at 45.

To aid in identifying the rare instances where courtroom closure is required, the Supreme Court articulated the following four-part balancing test: (1) "the party seeking to close the hearing must advance an overriding interest that is likely to be

prejudiced" if the courtroom is not closed, (2) "the closure must be no broader than necessary to protect that interest," (3) "the trial court must consider reasonable alternatives to closing the proceeding," and (4) the trial court "must make findings adequate to support the closure." Waller, 467 U.S. at 48.

On January 26, 2017, the undersigned held a hearing at which alternatives to closing the courtroom were addressed. Specifically, the parties and the undersigned discussed traditional Muslim female garb. Finding that reasonable alternatives to closing the courtroom exist, the Court will forgo any discussion of the first, second, and fourth Waller prongs in denying the motion to close the courtroom.[7]

          a)      Third Waller Prong – Reasonable Alternatives

Trial courts are required to consider alternatives to closing the court, even when offered none. Presley v. Georgia, 558 U.S. 209 (2010) (per curiam). Any alternative is unreasonable if it presents serious Confrontation Clause issues. See Morales v. Artuz, 281 F.3d 55, 58, 61 (2d Cir. 2002). The Confrontation Clause of the Sixth Amendment guarantees a defendant the right to confront the witnesses against him. See Deleware v. Van Arsdall, 475 U.S. 673, 678 (1986). Barring extreme circumstances, the defendant is guaranteed a meeting with witnesses.

---

[7] The Government's interest in the UC's safety, continued viability as an undercover officer, and the existence of ongoing national security investigations all constitute substantial interests.

14

On January 26, 2017, the undersigned specifically considered and questioned the parties as to the viability of alternatives to closing the courtroom. (See Tr. at 10-14). There are two major concerns. First, some alternatives would make it difficult for a jury to observe the witness's demeanor in response to questions, implicating the Confrontation Clause. Morales, 281 F.3d at 58, 61. Second, other measures, like screens, "risk[] implying to the jury that the family or friends of the defendant[s] in attendance are likely to be dangerous." See Ayala, 131 F.3d at 71-72.

Niqabs and burqas, both explicitly discussed at the hearing, offer intriguing options, especially in a case where the UC was an actual or feigned convert to Islam. The niqab covers the entire body, revealing only the eyes. The burqa covers the entire body while covering the eyes with a mesh. A witness wearing a niqab or a burqa could maintain anonymity while still affording a defendant the opportunity to confront and cross-examine a witness in open court. Niqabs and burqas greatly reduce the risk of implying to the jury that Defendants are dangerous since the jury has no reason to think the UC wears the niqab or burqa out of fear of Defendants rather than tradition. Likewise, the burden placed on the jury's ability to observe the witness's demeanor would be no greater than if the witness were truly a devout Muslim. Indeed, this Court has found no case law in this Circuit where an Islamic woman had to remove her niqab or burqa to testify. Defendants even conceded that a niqab, or other disguise, was preferred to closing the courtroom since "[the UC has] already been pretending anyway." (Tr. at 13).

Therefore, the Court finds that niqabs and burqas are reasonable alternatives to closing the courtroom. Since there are reasonable alternatives to closing the courtroom, the Government's motion to close the courtroom is DENIED. However, to protect the Government's interest, the Court will allow the UC to testify in a niqab or a burqa.

      2.    <u>Request 2 - Live audio feed during the UC's testimony</u>

The request for a live audio feed is moot since the courtroom will stay open to the public.

      3.    <u>Request 3 - Disclosure and cross-examination about the UC's true identity</u>

The Government's request to bar disclosure of any information regarding the UC's actual identity is DENIED consistent with this Court's discussion of Defendants' motion. The Court reserves judgment as to whether Defendants may cross-examine witnesses about the UC's identity, until such testimony is before the Court.

      4.    <u>Requests 4-7 - Defendants do not object</u>

                 Those requests are GRANTED.

P-049

     5.    <u>Request 8 - Inquiry into the UC's residence, family whereabouts, and other investigations unrelated to Defendants</u>

The Government's motion to preclude inquiry into the UC's residence, family whereabouts, and other investigations unrelated to Defendants is GRANTED. The Court notes that other investigations may become "related" to Defendants to the extent those investigations tend to show a pattern of entrapment. Defendants reserve the right to file a motion to admit such material upon a showing of relevance.

## Conclusion

For the foregoing reasons, this Court GRANTS Defendants' motion and GRANTS in part and DENIES in part the Government's motion.

SO ORDERED.

                                        /s/ USDJ STERLING JOHNSON, JR.

Dated: March 15, 2017  
       Brooklyn, NY                        Sterling Johnson, Jr., U.S.D.J.

P-049