| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------X | (Hon. Sterling Johnson, Jr.) |
| UNITED STATES OF AMERICA<br><br>-against-<br><br>NOELLE VELENTZAS and ASIA SIDDIQUI,<br><br>                     Defendants.<br>----------------------------------------------------------------X | DEFENDANT SIDDIQUI'S<br>SUPPLEMENTAL<br>SUBMISSOIN<br><br><br><br>1:15-cr-00213-SJ |

      Per this Honorable Court's direction, the defendant, Asia Siddiqui, through counsel, submits supplemental briefing on the on the issue of whether her questioning by FBI agents at LaGuardia Airport regarding her suspected contacts with known terrorists, and regarding a publication in an internet magazine allegedly espousing support for terrorism prior to her travel to Canada, fell within recognized administrative functions of protections of border integrity that do not require officials to advise a entrant of their *Miranda* rights. Ms. Siddiqui specifically provides authority for the significance of status as a U.S. citizen as opposed to status as an alien in determining whether the line of questioning objectively related to protection of border integrity.

**Background**

      After being secondarily detained in Canada for approximately two hours by U.S. Customs and Border Protection agents while her luggage, phone, laptop, and purse were searched, and after being questioned about travel to Canada, Ms. Siddiqui was again detained for further questioning when she landed at LaGuardia by agents of the FBI. The questioning occurred in a windowless conference room with the door closed, blocked by a law enforcement agent, and in the presence of seven persons - all of whom Ms. Siddiqui believed to be law

1

enforcement agents. At the inception of her questioning, Ms. Siddiqui was informed by the agents that it was a crime to lie to the FBI. She was not, however, advised of her *Miranda* rights, nor was she told that her participation in the interrogation was voluntary. The focus of the subsequent questioning was on Ms. Siddiqui's contacts with individuals with ties to terrorism and whether she had published materials related to Jihad in a forum connected with terrorism. The questions were aggressive and issued in a demanding and confrontational tone. During the questioning, Ms. Siddiqui did not feel that she could leave and, was in fact, not free to leave.[1]

During oral argument before this Court on September 27, 2018, the government argued that these facts did not require the agents to advise Ms. Siddique of her *Miranda* rights because questioning Ms. Siddiqui about her ties to terrorism objectively is related to a border function furthering "national self-protection" by preventing terrorists from entering the country. The defense argued that facts did not raise legitimate border integrity issues because Ms. Siddiqui was a U.S. citizen and therefore, unlike an alien, entitled to admission regardless of past associations with terrorism. Accordingly, the questioning was objectively for a criminal purpose. This Honorable Court requested authority from counsel on this point and authorized further briefing.

## Authority and Argument

The leading case dealing with terrorism concerns and border stops in the Second Circuit is *Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007). In *Tabbaa*, the plaintiffs, U.S. citizens professing Muslim faith, alleged that they had been detained for five hours, their car was

---

[1] Persons detained at the border are not free to leave. *See United States v. FNU LNU*, 653 F.3d 144, 153-54 (2d Cir. 2011).

searched, and they were finger printed at the U.S. border by U.S. Customs and Border Protection officers after they came back from attending a religious conference in Canada.² *Id.* at 92. The plaintiffs' sought relief from the officers' actions as an unreasonable search and seizure in violation of the Fourth Amendment, and/or an undue infringement of their religious practices in violation of the First Amendment and the Religious Freedom Restoration Act (RFRA). In upholding the dismissal of the plaintiffs' Fourth Amendment claims, the Court focused on the length of the detention and the intrusiveness of the search rather than underlying reasons for the officials' actions. *Id.* at 100-101. The Court also upheld the dismissal of the plaintiffs' First Amendment and RFRA claims finding that the burden on the plaintiffs' freedom was justified by the government's interest in preventing terrorism.

The reasoning in *Tabbaa*, however, does not extend to permit questioning without *Miranda* in the present case. "[W]hether a stop was permitted under [Fourth Amendment Doctrine] is irrelevant to the *Miranda* analysis." *FNU LNU*, 653 F.3d at 149 (2d Cir. 2011) (citing *United States v. Ali*, 68 F.3d 1468, 1473 (2d Cir. 1995). Likewise, the *Tabbaa* Court's finding that the government's interest in preventing terrorism was a legitimate reason for burdening the plaintiff's religious practices does not aid in the analysis of whether *Miranda* was required in this case. In determining whether or not *Miranda* was required, a court is directed not to consider whether the interest of the government is legitimate, but whether, under the circumstances, the questioning objectively served an administrative or criminal purpose. *FNU LNU*, 653 F.3d at 153, 154.

In Ms. Siddiqui's case, the answer to this question is found not in the subject matter, but in her status as a U.S. Citizen. Congress may condition the admission of aliens on the basis "that

---

² Security officials believed the conference had included radical speakers with links to terrorist organizations or promoted terrorism as religiously acceptable.

they will submit to reasonable questioning." *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S. Ct. 2574, 2581 (1975)(citing *Kleindienst v. Mandel*, 408 U.S. 753, 765-767 (1972). In that capacity, Congress has conditioned an alien admission to an absence of past association or endorsement of terrorism. Specifically, 8 U.S.C.S. § 1182(a)(3)(B)(VII) prohibits the admission of "[I]n general, any alien who endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization." Thus, an alien seeking entrance at the United States border would reasonably expect to be questioned about past associations with terrorists, as such questioning objectively furthers the administrative function of admission.

There is a "distinction [however] between the use of the immigration process to regulate the admission and removal of aliens, a legitimate exercise of the power of the political branch of government, and the use of that process to detain and remove citizens, an *unauthorized exercise* of political branch power." *Lyttle* v. *United States,* 867 F. Supp. 2d 1256, 1278 (M.D. Ga. 2012), (Emphasis added). Unlike an alien, a U.S. citizen is entitled, *inter alia*, "to *the absolute right to enter* [the United States] borders." *Nguyen v. INS*, 533 US 53, 67 (2001), (Emphasis added). In short, where a U.S. citizen is concerned, preserving the integrity of the border against the admission of unauthorized person is accomplished by ensuring that the individual is in fact a U.S. citizen. Once that is done, no further enquiry is required to ensure the integrity of the border because a U.S citizen has an absolute right to entry. Here, there was no question as to Ms. Siddiqui's identity as a U.S. citizen, thus she was entitled to enter the United States regardless of past associations with terrorists or past endorsement of terrorism. While an alien objectively would expect to be questioned about past associations with terrorism, a U.S. citizen would not expect the same questioning because of the distinction between the government's

legitimate use of its plenary authority to deny admittance to an alien on these grounds, but not its authority to deny the same to a U.S. citizen.

Indeed, the government admits that it could not deny Ms. Siddiqui admission, but it claims instead that the questions nevertheless objectively fell within the security interest to protect against terrorist attack. The government's claim ignores the bedrock principal that border exceptions are not based on general safety concerns, but instead "reflect longstanding concern for the *protection of the integrity of the border.*" *United States v. Montoya De Hernandez*, 473 U.S. 531, 538, 105 S. Ct. 3304, 3309 (1985), (emphasis added). To protect this integrity "[t]ravelers may be so stopped in crossing an international boundary because of *national self-protection* reasonably requiring one entering the country *to identify himself as entitled to come in*, and his belongings as effects which may be lawfully brought in." *Almeida-Sanchez v. United States*, 413 U.S. 266, 272, 93 S. Ct. 2535, 2539 (1973), (*emphasis added*). As explained above, the questions here do not go to Ms. Siddiqui admissibility, indeed they do not go to anyone's admissibility. Of the three people she was questioned about, two of the individuals, Afia Siddiqui, and Tarek Mahanna, are imprisoned in the U.S., and a third, Samir Khan, was deceased.[3] Consequently, none of the questions related to the protection of the integrity of the border. Indeed, the government admitted as much at oral argument when they agreed that there was no question as to Ms. Siddiqui's admissibility into the United States.

Instead, what the FBI's questions objectively related to is not protecting the integrity of the border from the entrance an unauthorized person (e.g. a foreign terrorist), but rather the

---

[3] Travis Andersen, *Tarek Mehanna challenging conviction for helping Al Qaeda*, Boston Globe (July 25, 2018), https://www.bostonglobe.com/metro/2018/07/25/tarek-mehanna-challenging-conviction-for-helping-qaeda/EhIasqEv5oZdv52NyGU9eK/story.html#comments; Mark Mazzetti, Eric Schmitt, and Robert F. Worth, *Two-Year Manhunt Led to Killing of Awlaki in Yemen*, The New York Times (Sept. 30, 2011), https://nyti.ms/2lp10l0; C.J. Hughes, *Pakistani Scientist Found Guilty of Shootings*, The New York Times (Feb. 3, 2010), https://nyti.ms/2LfWdLI.

ongoing criminal investigation of Ms. Siddiqui as a suspected terrorist. This fact is borne out not only by the content of the questions, but the objective circumstances of the questioning. The questioning clearly arose out of the existence of a criminal investigation against Ms. Siddiqui instituted prior to her presentment at the border. None of the correspondence Ms. Siddiqui was questioned about was in her possession, and none of the individuals about whom she was questioned were traveling with her. Consequently, neither the search of her belongings nor the nature of her travel gave rise to the questions, thereby leading a reasonable person to objectively believe that the questioning related to a criminal investigation rather than to the entry into the United States. Finally, the fact that the questioning was conducted by FBI agents as opposed to customs agents also supports the objective conclusion that the questioning was not routine but instead related to criminal conduct. *See United States v. Long Tong Kiam*, 432 F.3d 524, 530-31 (3d Cir. 2006).

## Conclusion

The government's contention that the questioning of Ms. Siddiqui fell within a legitimate function of border integrity which an objective person in Ms. Siddiqui's position would reasonably expect, is without merit with respect to a U.S. citizen like Ms. Siddiqui. The purpose of Ms. Siddiqui's questioning by the FBI agents is plain, it was for a criminal investigative purpose. While protection of the border allows the government to detain and search the possessions of any persons seeking to enter the U.S., including a U.S. citizen suspected of terrorism, the government may only deny admission of that person if they are an alien. Preventing U.S. citizens from committing acts of terrorism in the United States is a law enforcement function. As such, under the case law of the U.S. Supreme Court, the Second

6

Circuit, and this Court, the FBI was not permitted to interrogate Ms. Siddiqui at the border without first advising her of her *Miranda* rights.

Respectfully submitted this 12th day of October, 2018.

> By: /s/ *Charles Swift*
> Charles D. Swift,
> Pro Hac Attorney for ASIA SIDDIQUI
> 833 – E. Arapaho Rd., Suite 102
> Richardson, TX  75081
> (972) 914-2507
> cswift@clcma.org

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of defendant Siddiqui's **Supplemental Submission** was electronically filed and served on the Court's electronic filing system:

DATED this 12th<sup>h</sup> day of October, 2018.

> /s/ *Charles D. Swift*
> Charles D. Swift
> Pro Hac Attorney for Asia Siddiqui
> 833 – E. Arapaho Rd., Ste. 102
> Richardson, TX  75081
> Tel: (972) 914-2507
> Fax: (972) 692-7454
> cswift@clcma.org